*1234·14*

ORIGINAL

PDR NO. 1234-14

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAR 13 2015

Abel Acosta, Clerk

In The
Court of Criminal Appeals
Austin, Texas

---

Abraham Campos,                                    Appellant Pro Se

Vs.

The State Of Texas,                                Appellee

---

Appellant's Petition
For Discretionary Review

---

Appellan's Petition For Discretionary Review

From The First Court Of Appeals

Appeal No. 01-14-000167-CR,

On Appeal From The 149th District Court

Of Brazoria County, Texas,

Cause No. 26,947.

FILED IN
COURT OF CRIMINAL APPEALS

MAR 13 2015

Abel Acosta, Clerk

---

Oral Argument Waive

Abraham Campos-#721237
Eastham Unit
2665 Prison Rd. #1
Lovelady, Texas 75851

Identity Of Parties And Counsel

Trial Judge:

Hon. Teri Holder
District Judge
149th Judicial District
Court Of Brazoria County, Texas

Prosecutor(s):

David Smith, Assistant
District Attorney
111 E. Locust St., Ste. 408-A
Angleton, Texas 77515-4678

Appellant Attorney:

Abraham Campos, Pro se
Appellant In Propia Persona
Eastham Unit
2665 Prison Rd. #1
Lovelady, Texas 75851

Appellant:

Abraham Campos-#721237
Eastham Unit
2665 Prison Rd. #1
Lovelady, Texas 758851-

# TABLE OF CONTENTS

Identity of Parties and Counsel........................................... i

Table of Contents........................................................ ii

Index of Authorities..................................................... iii

Statement Regarding Oral Argument........................................ 1

Statement of the Case.................................................... 1

Procedural History of the Case........................................... 1-2

Questions for Review..................................................... 2-4

1. Did the First Court of Appeals erroneously determine that Appellant
was not entitled to Abate the Appeal in regards to appoint of Counsel
on Appeal ?.............................................................. 2

2. Did the First Court of Appeals erroneously determine that Appellant
was not entitled to DNA testing on Unidentified Biological Material
according to the Statutory Provisions of Texas Code of Criminal pro-
cedure Article 64.035,and Newly enacted Senate Bills 122 and 344 ?... 4

Reason for Review........................................................ 2-4

Reasonable Grounds Exist................................................. 9-11

Prayer................................................................... 12

Certificate of Service................................................... 12

Article II Judicial Notice............................................... 13

Appendix................................................................. 14

# Index of Authorities

Winter-V-Presiding Judge,118 SW3d 775(Tex.Crim.App.2003)................... 2

Blacklock-V-State,235 SW3d 231(Tex.Crim.App.2007)........................ 5-8

Brady-V-Maryland,373 U.S. 83 (1963)....................................... 5

Cook-V-State,940 SW2d 623,627(Tex.Crim.App.1997).......................... 6.

Esparza-V-State,282 SW3d 913,922(Tex.Crim.App.2009)....................... 8

Ex parte Richardson, 70 SW3d 865,871(Tex.Crim.App.2002)................... 6

Gray-V-State, 69 SW3d 835(Tex.App.-Waco2002).............................. 3

In re LaSethia G. Whitley 79 SW3d 729(Tex.App.-Corpus Christi 2002)....... 5

In re Luster, 77 SW3d 331(Tex.App.-Houston[14th]Dist.2002)................ 5

In re Morton, 326 SW3d 634(Tex.Crim.App.2010)............................. 6

In re Rodriguez, 77 SW3d 461(Tex.Crim.APP.)............................... 3

Kyles-V-Whitley,115 S.Ct. 1555 .......................................... 6

Kutzer-V-State, 75 SW3d 427(Tx.Crim.App.2002)(see generally)............. 8

Little-V-State,991 SW2d 864,866(Tex,Crim.App.1999)....................... 5

McFarland-V-State,928 SW2d 482,511(Tex.Crim.App.1996).................... 5

Neveu-V-Culver,105 SW3d 641,642(Tex.Crim.App.2003)....................... 3

Nickerson-V-State, 69 SW3d 661,676(Tex.App.-Waco 2002,pet.ref'd)......... 5

Padilla-V-State,2013 Tex.App.LEXIS 7481.................................. 7

Richardson-V-State,NO.02-11-00453-CR(tx.App.-Ft.Worth,Aug.31,2011,no pet). 8

Robert Whitfield-V-State,430 SW3d 405(Tex.Crim.App.2014)................. 3

Routier-V-State,273 SW3d 241(Tex.Crim.App.2008).......................... 6

## Statutes and Rules

Rule 68.1 Tex.Rule s App.Proc.(TRAP)..................................... 1

Rule 66.3(c) T.R.A.P. ................................................... 2

Chapter 64-64.035,Tex.Code Crim.Proc.Ann................................. 1-8

Senate Bills 122 and 344 ................................................ 5

U.S.Constitutions 5th,6th,14th Amendments............................... 4

In The

Court Of Criminal Appeals

Austin, Texas

---

Abraham Campos,                               Appellant Pro Se

Vs.

The State Of Texas,                           Appellee

---

## Appellant's Petition

## For Discretionary Review

To The Honorable COURT Of Criminal Appeals:

COMES NOW Abraham Campos, (hereafter Appellant), in the above styled and numbered cause(Pro se), and files his "Petition For Discretionary Review," pursuant to Rule 68.1, T.R.A.P.. In support of his petition for review, Appellant would respectfully show the Court as follows:

## Statement Regarding Oral Argument

Appellant waive oral argument as a Pro se litigant.

## Statement Of The Case

Appellant was tried by jury in the District Court of Brazoria County, Texas, 149th Judicial District Court for the offense of murder and upon his plea of not guilty was found guilty of murder as charged in the indictment (Count1 and 2) by the jury and his punishment later assessed by the judge at the term of Forty (40years in the Texas Department Of Criminal Justice-Correctional Institutional Division (TDCJ-CID). On January 6.2014, Appellant filed a "Request To Conduct Forensic DNA Testing under Article 64.01(a-1), Texas Code of Criminal Procedure," seeking post-conviction DNA testing of evidence from his criminal conviction. The trial court denied Appellant's Motion on

post-conviction DNA testing of evidence from his criminal conviction. The trial court denied appellant's motion on February 6,2014,from this denial Appellant appealed and on July 9,2014,Appellant filed his "Motion To Abate The Appeal" in order for the trial court to hold a hearing on his status as an indigent person,and thereafter apoint counsel to represent him in his appeal" in accordance with Tex.Code Crim.Proc.Ann.art64.01(c)(Vernon Supp.2009) where the Article says a person is "Entitled" to counsel under that Chapter. Winter-V-Presiding Judge,118 SW3d at 775,[1-3].Furthermore, it says the court "SHALL" appoint counsel,if the defendant informs the court he intends to file a motion undr chapter 64,and the Court finds him indigent, Id. per the literal reading of the statute,the defendant need not ask even to be appointed an attorney. Appellant herein met all the criteria for obtaining DNA testing of evidence under Chapter 64.01,TC.C.P..

On September 4,2014,The First Court of Appeals in Houston,Texas issued its ORDERS denying Appellant's "Motion to Abate the Appeal" (APPENDIX) No Motion for Rehearing was filed,and also Denied Appellant's Direct Appeal on December 18,2014. Petition For Discretionary Review is due on or before March 20th ,2015.

## Question For Review

1. Did the First Court of Appeals erroneously determine that Appellant was not entitled to Abate the Appeal in regards to Appellant's indigency status and thereafter appoint him counsel for the purpose of Appeals ?

## Reason For Review

Discretionary Review should be granted under Rule 66.3(c),T.R.A.P.,becasue the ORDER/OPINION denying Appellant's "Motion To Abate The Appeal," is in conflict with Winter-V—Presiding Judge,118 SW3d at 775[1-3](Tex.Crim.App. 2003),there the Court of Criminal Appeals held: The issue before us is,when a defendant has met the test for appointment of counsel under chapter 64 of the Texas Code of Criminal Procedure,whether the convicting court has discretion to "DENY" appointment of counsel. We hold that, notwithstanding the improbability of obtaining relief,appointment of counsel is mandatory. The Court further held at page 775,Winter-V-Presiding Judge,supra Tex.Code Crim.Proc.Ann.art.64.01(c))(Vernon Supp.2009),that the article says a person

2

is ENTITLED to counsel under that chapter Id. Furthermore, it says the court SHALL appoint counsel for the defendant if the defendant informs the court he intends ti file a motion under chapter 64,and the court finds him indigent. Id. per the literalreading of the statute,the defendant need not even ask to be appointed an attorney. The court must appoint an attorney if the two basic requirements of Article 64.01(c)are met.Defendant here met all the requirements of Article 64.01(c),Tex.Code of Crim.App.Ann.see also Neveu-V-Culver,105 SW3d 641,642(Tex.Crim.App.2003),Defendant Abaraham Campos,filed a motion informing the court that he is indigent by submitting a declaration of indigency under penalty of perjury.See In re Rodriguez,77 SW3d at 461. The court in Gray-V-State, 69 SW3d 835(Tex.App.-Waco2002),held that: with notice of appeal Gray, filed an affidavit stating that he is indigent. The Court further stated: Gray, may be entitle to the appointment of counsel to assist him in this appeal,however,we are not equipped to make a determinat-ion about his status as an indigent person,nor authorized to appoint counsel if he is entitle thereto,therefore,,we abate the appeal to the trial court to determine whether Gray is indigent. Furthermore, in Robert Whitfield,430 SW3d 405(Tex.Crim.App.2014).Stated: "But Judge's refusal to appoint counsel for post-conviction DNA testing is not an immediately appellable order under Art.64.05,because it is a preliminary decision that is appropiately reviewed as alleged ERROR after a motion for DNA testing is DENIED."

3

## Question For Review

2. Did the First Court of Appeals erroneously determine that Appellant was not entitle to DNA testing of Unidentified Biological Material according to the Statutory Provisions of Texas Code of Criminal Procedure under Article 64.035,and Newly Enacted Senate Bills 122 and 344 ?

## Reason FOR Review

Discretionary Review should be granted under Rule 66.3(c),T.R.A.P.,because the MEMORANDUM/OPINION denying Appellant's "Request For Forensic DNA Testing" is in conflict with Statutory Provisions of the Tex.Code of Criminal Proc. Chapter 64,and Articcle 64.035. This chapter provides the right to the DNA testing of biological material that was SECURED in relation to the offense that is the basis of the challenge material for DNA testing,and the UNCONSTIT- UTONALLY the Texas Statutes trial court,and Court of Appeals have authoritive- ly construed,chapter 64 in all. If one or more of the items that Appellant is requesting to be subjected to this post-convictiion DNA testing meets any of these criteria,should be order testing by trial court. Article 64.01(b) criteria,due to the State having control of biological material would "have discrete and independent probative value,the overall important of the statute mandates that Appellant should have such testing at the time,or forego testing later," and the biological material being requested to DNA testing of this evidence that was not subjected to testing during my trial,was SECURED by exclusive possession,custody,and control of the State of Texas or the United States Government by and through its agents,the police,and the proseccuting attorney's office,and the Defendant has no other means of ascertaining the the disclosure requested. "The items requested are not priveleged or exempt from discovery."Furthermore, Article 1,Section 10 of the Texas Constitution of the State of Texas,and the Fifth,Sixth,and Fourteeth Amendments to the United States of America will be violated,to Appellant's irreparable injury and thus deprived the Defendant of a fair trial,and in the intrest of justice, such DNA testing should be order by the trial court. Because "IDENTITY" is and was an issue in this case,and if such results would have provided direct support for the theory of an unknown intruder and could have influence the jury when combined with other evidence containing biological material that

4

belied appellant's guilty findings by the jurors,and the State emphasized that testimony and the State's argument were key in persuding the jury of Appellant's guilt..By DNA testing of evidence containing biological material that I believe may undermine the basis for my conviction, As chapter 64 mandates. Would proof Appellant is not guilty and innocent of this murder conviction.(ACTUAL INNOCENCE)."NOT BLEEDING AND NO BLOOD ON CLOTHING-MEANS-EXCULPATING AND FREEING THE INOCENT BY DNA TESTING."

## ARGUMENT

During Appellant's trial State rely on this evidence to show Appellant was the perpetrator of the victim,the knife,knifelike instrument,faucet knob, and physical evidence and NONE of the above mention evidence was subjected to DNA testing if this evidence would have been subjected to DNA testing it would merely exclude appellant,but also **IMPEACH STATE'S SOLE-WITNESS** AT TRIAL WHERE HE MAKES AN IDENTIFICATION THE APPELLANT IS THE PERPETRATOR IN this murder crime it is **IRRELEVANT** to whether appellant can make identity an issue with the exculpatory DNA testing. Blacklock-V-SState,235 SW3d 231(Tex. Crim.App.2007),Holding:"On defendant's petition for discretionary review, the Court of Criminal Appeals,Hervey J.,Held:"that victim's trial testimony that she knew defendant and identified him as perpetrator was **IRRELEVANT** to whether defendant could make identity an issue with exculpatory DNA testing." Thereafter,Court of Criminal Appeals granted appellant's petition for discretionary review these decisions by the court of appeals."Not only trial court went on to **ABUSE ITS DISCRETION** in denying appellant's DNA testing by its discretion of misinterpret or misapply the law correctly.In re Luster,77 SW3d 331(Tex.App.-Houston[14th]2002);In re LaSethia G.Whitley,79 SW3d 729(Tex.App.-Corpus Christi 2002). Furthermore,the denial of exculpatory material not being disclose is in violation of BRADY-V-Maryland,373 U.S.83,87 S.Ct.1194,10 L ed2d 215(1963);and by the State Prosecutors withholding such evidence brings about the BRADY DOCTRINE evidence is material only if there is reasonable probability that,had evidence been disclose to the defense,results of the proceedings would have been different,overriding concern is with the justice of the findings of guilt,not with the accused's ability to prepare for trial, McFarland-V-State,928 SW2d 482,511(Tex.Crim.App.1996),overrule on other grounds, 983 SW2d 249,263(Tex.Crim.App.1996). Information is "MATERIAL" when "there is reasonable probability that,had the evidence been disclosed to the defense, the results of the proceedings would have been different." Little-V-State,

5

991 SW2d 864,866(Tex.Crim.App.1999);<u>Nickerson-V-STATE</u>, 69 SW3d 661,676(Tex. App.-Waco2002,pet.ref'd)citing: <u>Little</u>: "A Brady violation is one of due process, and a three-part test is used to evaluate whether a violation has occurred:(1)the State failed to disclose evidence,regardless of prosecutor's GOOD or BAD FAITH;(2)the withheld evidence is favorable to the defendant; (3)the evidence is material,i.e.,there is reasonable probability that had the evidence been disclosed,the outcome of the trial would have been diffrent. <u>Ex parte Richardson</u>,70 SW3d 865,871(Tex.Crim.App.2002);<u>Little</u>,991 SW2d at 866. The question is "Not whether the defendant would more likely than not have recieved a diffrent verdict with the evidence,but whether in its absence he recieved a fair trial,understood as a trial resulting in a verdict **worthy of confidence.**'" <u>Kyle-V-Whitley</u>, 514 U.S.419,115 S.Ct.1555,131 L.Ed2d 490(1995); See <u>Cook-V-State</u>, 940 SW2d 623,627(Tex.Crim.App.1997)(Confidence in the**("OUTCOME)** And as mentioned,the State's GOOD or BAD FAITH in withholding favorable evidence is irrelevant.


OPINION at 7-10:


Where the"'DNA TESTING ON REMAINING ITEMS"

States: "even if the clothes and pipe had DNA belonging to a third person,that Appellant would not established by preponderance of the evidence that Appellant was not guilty."

Court of Appeals ruling is in contradiction to the privious ruling in.<u>In re Morton</u>,326 SW3d 634(Tex.Crim.App.2010). "That the DNA testing of the <u>BANDANA</u> would be exculpatory in the event that the testing of the <u>BANDANA</u> contains Christine's blood,a third party's DNA (due to blood,sweat,or hair),and none of Appellate's DNA." As in the instant case Appellant contends that DNA testing of the bloody clothes,knife,knifelike instrument could obtain exculpatory results,Appellant alleges that testing of these items could demonstrate that the material that was undisclosed by State Prosecutor contains the third party's DNA,and none of Appellant's DNA, such a result would have provided direct-support for the theory of an unknown intruder and could have influence the jury when combined with other evidence that misrepresented Appellant's guilt at his trial,and Appellant believes may undermine the basis for his conviction.

6

Therefore,Appellant has met Chapter 64 Provisions by qualifying for forensic DNA testing because the evidence is in the possession of the Alvin Police Department and has been there since the date of the offense.Texas Code of Criminal Procedure 64.01(b),and the plain language of the Chapter 64 in all.

**Opinion at 7-8:**

State Argues That:"Appellant does not articulate how the absence of his own DNA on Miranda's clothing would be exculpatory."

The absence of appellant's own DNA of clothing from Miranda's clothing would be exculpatory because the appellant had presented alibi and there was a lack of physical evidence LINKING HIM to the incident,and police officers ,prosecutors pressured eyewitness into making false identification,failed to produce the EXCULPATORY EVIDENCE,and failed to properly investigate (EMILIO) as the perpetrator is sufficient to present also a claim that they acted in BAD FAITH.

The appellant claims these acts were made by the malicious prosecution in order to have a conviction to this murder crime.That had the physical evidence been DNA tested would have proven the perpetrator of this murder and negating all physical evidence to DNA testing of the items listed in the State's exhibit of the items with BIOLOGICAL MATERIAL AS in.Routier-V-State,273 SW3d 241(Tx.Cr. App.2008),Court of Criminal Appeals: "It is appropiate first to determine which of the NINE ITEMS would qualify for post-conviction testing under these threshold criteria should be included in the collective calculus for determining whether the Appellant would not have been convicted. "Appellant invokes Article 64.01 (b)(1)(B)'s no-fault provision to argue generally that SHE was not at fault for failing to obtain DNA testing simply because all of the biological evidence were in the State's control."

Appellant asserts in the instant case is not and cannot be faulted for HIS failure to seek DNA testing at the time of trial,because the State has exclusive possession of all material,and Appellantcan never be at fault for failing to seek DNA testing at the time of trial.For this reason,Appellant argues,He should be allowed to obtain the post-conviction DNA testing under Article 64.01(b)1)(B),were by definition,in the State's possession at the time of Appellant's trial.Therefore,Appellant can invoke the no-fault provision of sub-sections(b)(1(A)(i)(ii).Given the volume of blood at the sc ene could have determine the DONOR of the DNA of the perpetrator and exclude appellant of this offense of murder,and in the intrest of justice,requires DNA testing. In Padilla-V-State,2013 Tex.App.LEXIS 7481,States:"Basic requirements for post-conviction DNA testing are that BIOLOGICAL EVIDENCE EXIST,that evidence is in condition that it can be tested,that the idenity of the perpetrator is or was an issue,and that this is the

type of case in which exculpatory DNA results would make a difference."

Appellant asserts his case meets the provisions of Chapter 64, and to demonstrate the exculpatory material exist appellant would show this Court the following evidence existence because the "STATE'S MOTION TO DENY DNA TESTING AND APPOINTMENT OF COUNSEL" ON page 3,Section VI, States:

"Finally,to ensure the preservation of the evidence in this case,the State urges the Court to allow the law enforcement agency to retain possession of this evidence until the COurt determines whether DNA testing should be required.To transfer this evidence to the possession of the COurt would hinder preservation and add chain custody problems.The attached exhibit contains a list of property retained by the police.The District Clerk's records reflect that the Clerk's Office is in possession of the knife admitted at trial."

DNA testing of evidence appellant is requesting to be tested will demonstrate a different outcome and show 51% chance appellant would not have been convicted if the jurors would have been shown the evidence in the POSSESSION of the State and would determine the IDENTITY of the DONOR of the blood that none of appellant's DNA and there would show the third party who was the perpetrator or the State's sole-witness because of his inconsistencies of the statements in whole of the murder crime he witness,and showing that exculpatory DNA results would establish that appellant is actual innocent of this offense of murder.Because the multiple inconsistencies statements made by the State's sole-witness are both exculpatory and material,and shows that the **CREDIBILITY** of the witness was an issue,and the trial court had enough evidence in front of it to determine by preponderance of the evvicence that favorable DNA results would have prevented appellant's conviction.Because identity was and is still an issue in the present case,and during appellant's defense trial was IDENTITY,it cannot be concluded identity was not an issue. In Esparza-V-State,282 SW3d 913(Tex.Crim.App.2009),the court found that defendant had established that he would not have been convicted if DNA testing yielded exculpatory results dispite eye-witness identification of him as the one who committed the aggravated sexual assault the eye-witness identification of the defendant was of "NO CONSEQUENCE" in determiningthat issue."Quoting: Balcklock-V-State,235 SW3d 231(Tex.Crim.App.2007),the Court of Criminal Appeals **REVERSE** the decision of Court of Appeals(which denied the requested DNA testing0 despite the fact the victim knew the defendant.Moreover,the tenor of Article 64.02 is to provide an appellant with post-conviction access to existing biological samples for the purpose of DNA testig.Richardson-V-State,NO.02-11-00453-CR(Tx.App.-Ft.Worth,Aug.31,2011,no pet.);Kutzer-V-State,75 SW3d 427 ( Tx.Cr.App.2002)(SEE GENERALLY).The House Criminal Jurisprudence Committee later amended the Senate Jurisprudence Committee's version of Article 64.035,to authorized ALL PHYSICAL EVIDENCE

8

with biological material to be tested and be sent to State and federal data system.

Both House and Legislature as stated by the supporters of Chapter 64, to give convicted people full access to the Court's and provide a check on individual court's decisions." Thereafter, Senate Bills 122 and 344 were violated along with Chapter 64 in all., by the trial court and Court of Appeals in not following the Statutory Provisions. Furthermore, State's Prosecutor also violated Article 64.02, by not delivering the biological material or explain in writing why it cannot do so. In fact, it would appear that the purpose of requiring to the State to deliver the evidence to determine the presence of biological material. The failure of the State to comply with the STatutes effectively prevented Appellant from being able to establish that the knife, knifelike instrument, clothing seize, pipe smeared with blood, and knob faucet contained biological material. The statutes also does not place any particular burden of proof on the convicted person to show that the existence contain biological material., and it is a greater than 51% chance that had the exculpatory results been obtain from the above mentioned evidence, Appellant would not have been convicted .However, if testing on the biological material resulted in unknown DNA being present, there is certainly a greater than 51% chance Appellant would not have been convicted.

The Trial Court and Court of Appeals erred in failing to order DNA testing of the biological material in this case. This Court should vacate the trial court's and Court of Appeals order and remand for requested evidence.

Finally, the Court of Criminal Appeals recently stated that it granted relief by post-conviction writ of habeas corpus to convicted persons who have used favorable forensic DNA test results to prove actual innocence.

## REASONABLE GROUND EXIST

OPINION AT 3 pg.:

Officer T.Earl testified that Appellant was not bleeding and had no scratch marks on him or blood splotches on his clothing. "How does one avoid blood splotches on his clothing?" 51% of State's evidence could disprove, contrary to hearsay testimony of three persons.The pipe had blood, faucet knob also with blood, because appellant did not put the knife in the sink, when he was running away from the scene. As stated by Emilio Miranda testimony.
" NOT BLEEDING AND NO BLOOD ON CLOTHING-MEANS-EXCULPATING AND FREEING THE INNOCENT BY DNA TESTING."

9

The Appeals Court only considered the testimony of State's witness contrary to other testimony of Appellant's mother.

Appellant has prove by the preponderance of the evidence that the last of the testing of the pipe,clothing seized,faucet knob,and tennis shoes and ect...The State has in its possession.This will meet the Appellant's requirement that a third party's DNA was likewise present.

It is not known that the pipe was in the possession of Rodriguez and started something with Emilio.(Fight).[See attach Affidavit Second statement by Emilio).

The knife was found in the kitchen sink and not on Appellant when he was arrested by Officer T.Earl,and "No blood splotches on his clothing 51%.

Miranda was likewise intoxicated as all the others,if not very intoxicated, to intoxicated to have seen appellant with a knife,running away from the scene means who put the knife in the sink to hide the eviddence.Appellant within his right frame of mind would have kept the knife in his possession, but it was not like that at all.

The Trial Court and Appeals Court have relied on testimony of Miranda who was also intoxicated to DENY DNA testing that could pin point prints or ect., like skin tissue or cells for that reson.New testing would convict or exculpate appellant by preponderance of the evidence.

It would prove Miranda,for the State was an intoxicated liar,or a very intoxicated liar,who placed the knife in the sink himself to cover-up for himself unanswered evidence.Miranda testified that he was the only person in and out of the kitchen the night of the murder.

Denial of DNA testing would violate Due Course of Law of the Texas Constitution and Equal Protestion thereof.

**STATE'S EVIDENCE PROVES ONLY PRESENTS:**

(1) fingerprint from a beer can that match appellant;

(2) Appellant's mother contradicted Miranda's testimony;

(3) State's Sole-witness fail to show how the knife was found in the sink or who placed the knife in the sink;

(4) Miranda either put the knife in the sink and told police where it was, if the knife was the instrument use.

**STATE'S SOLE-WITNESS:**

(1) Miranda heard Rodriguez scream;

(2) He looked out a kitchen window and saw appellant holding a knife to Rodriguez;

(3) Miranda saw appellant running away from the house;

(4) Beer can with appellant's thumb print, show only present;

(5) Probative force of evidence do not tend to show guilt by present:

Thereafter, Miranda testified that "He looked out a kitchen window to see Appellant grabbing Rodriguez while holding a knife, and **NO BLOOD SPLOTCHES ON HIS CLOTHING.**

Deputy C.Frame testified that he collected items from the scene of the stabbing, which if tested would show biological material exist for DNA testing, and No identifiable prints were detected on the knifelike instrument, knife.

Deputy Frame was able to lift a thumb-print from a beer can he collected at the scene and testified at trial that the print match appellant's thumb -print. Appellant. asserts that this print would be useless because appellant was there prior to the incident, and that he was **NOT** present before any of the confrontation Emilio and Rodriguez had prior to appellant's arrival to visit his mother.

Emilio Miranda's inconsitence statement made to the Alvin Police Detectives prove he was very intoxicated and lied several times to the detectives, on the night of the crime Miranda statement at the scene was "ORIGINAL STATEMENT: FROM THE ALVIN POLICE REPORT PAGE 4, "RAMIREZ STATED HE HEARD THE VICTIM CALL WHEN HE CAME OUT INTO THE YARD HE INITIALLY DID NOT SEE ANYTHING, BUT."

This is the first at the scene statement by the State's sole-witness that shows why the material evidence should be DNA tested for the Appellant, and further more, through out the investigation Miranda change his version of what he actually witness, His inconsistence statements made prove that Appellant has REASONABLE GROUNDS for DNA testing of the BIOLOGICAL MATERIAL IN THE STATE'S POSSESSION, along with the above mention testimonies the Appeals Court has stated in there denial of appellant's DNA testing.

According to the Prrovisions of 11.071, 11.072, and 11.073, Certainty Testing of the Procedure Related to Certain Scientific Evidence.

11

## PRAYER

**WHEREFORE,**Appellant Abraham Campos,prays that the Court of Criminal Appeals grant this "Petition For Discretionary Review" reverse the decision of the Court of Appeals,and remabnd this case for a hearing on Appellant's status as an indigent person and thereafter,appoint him and attorney for this appeal and that the case be set for submission in the Court of Criminal Appeals, that,after submission,and any other relief Appellant is entitle too. Also in the intrest of justice requiring DNA testing.

Respectfully submitted,

/S/Abraham Campos-#721237
Eastham Unit
2665 Prison Rd.#1
Lovelady,Texas 75851

Appellant Pro-se

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing "Appellant's Petition For Discfretionary Review" brief was forwarded by U.S.Mail,postage prepaid, To:Jeri Yenne,District Attorney of Brazoria County,Texas at 111 E.Locust St.,Suite 408-A,Angleton,Texas 77515,and To The State Prosecuting Attorney's Office,at P.O.Box 12405,Capitol Station,Austin,Texas 78711, On this 9th day of March 2015.

/S/ Abraham Campos-72123
Eastaham Unit
2665 Prison Rd.#1
Lovelady,Texas 75851

Appellant Pro-se

12

# ARTICLE II JUDICIAL NOTICE

Rule 201 Judical Notice of Adjudicated Facts:

(a) Scope of Rule: This rule governs only judicial notice of adjudicative facts;

(b) Kinds of Facts: A judicially notice fact must be one subject to reasonable dispute in that it is either(1) generally know within the territorial

(c) When Discretionary: A Court may take judicial notice,whether requested or not;

(e) Opportunity To Be Heard: A party is entitled upon timely request to an opportunity to be as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification the request may be made after judicial notice has been taken.

Order issued September 4, 2014



In The

# Court of Appeals

For The

## First District of Texas

---

## NO. 01-14-00167-CR

---

### ABRAHAM CAMPOS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 149th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 26947-3**

---

## ORDER

Appellant, Abraham Campos, appealed from the trial court's order denying his motion for post-conviction forensic DNA testing. *See* TEX. CODE CRIM. PROC. ANN. art. 64.01(a-1) (West Supp. 2014). On July 9, 2014, appellant filed a "Motion to Abate the Appeal." In his motion, appellant requests that we abate this

appeal and order the trial court to hold a hearing on his "status as an indigent person, and thereafter appoint counsel to represent him in this appeal." We deny the motion.

## Background

On January 6, 2014, appellant filed a "Request to Conduct Forensic Evidence DNA Testing Under Article 64.01(a-1), Texas Code of Criminal Procedure," seeking post-conviction DNA testing of evidence from his criminal conviction. In the affidavit accompanying his motion, appellant stated that he is indigent and requested that an attorney "be appointed during these proceedings" to represent him.

The trial court denied appellant's motion on February 6, 2014. In its order, the trial court found that appellant failed to establish by a preponderance of the evidence that appellant would not have been convicted if additional DNA testing was conducted. The trial court also found that appellant "failed to meet his burden to show reasonable grounds for appointment of counsel as required under Article 64.01(c) of the Code of Criminal Procedure" and denied appellant's request for appointment of counsel.

On February 24, 2014, appellant filed a notice of appeal and an affidavit of indigency, seeking appointed counsel to represent him on appeal. The trial court denied the request on February 25, 2014.

On July 9, 2014, appellant filed his motion to abate, requesting that we abate this case and order the trial court to hold a hearing on his indigence, find him indigent, and appoint counsel to represent him in this appeal.

## Analysis

There is no constitutional right to appointed counsel in a proceeding under Chapter 64 of the Texas Code of Criminal Procedure. *See Hughes v. State*, 135 S.W.3d 926, 927 (Tex. App.—Dallas 2004, pet. ref'd).

Nevertheless, there is a statutory right to appointed counsel in a Chapter 64 proceeding. *See* TEX. CODE CRIM. PROC. ANN. art. 64.01(c); *Ex parte Gutierrez*, 337 S.W.3d 883, 889 (Tex. Crim. App. 2011); *Gutierrez v. State*, 307 S.W.3d 318, 321, 322 (Tex. Crim. App. 2010). "A convicted person is entitled to counsel during a proceeding under" Chapter 64 "if the person informs the court that the person wishes to submit a motion under this chapter, the court finds reasonable grounds for a motion to be filed, and the court determines that the person is indigent." TEX. CODE CRIM. PROC. ANN. art. 64.01(c).

3

Prior to 2003, the statutory right to appointed counsel was absolute for any indigent person who either filed or expressed a desire to file a motion for forensic DNA testing under Chapter 64. *See Ex parte Gutierrez*, 337 S.W.3d at 889 & n.10; *Gutierrez*, 307 S.W.3d at 322 & n.26; *Gray v. State*, 69 S.W.3d 835, 837 (Tex. App.—Waco 2002, no pet.). The legislature, however, amended the statute in 2003 to restrict the right to appointed counsel in Chapter 64 proceedings. *See* Act of April 25, 2003, 78th Leg., R.S., ch. 13, § 1, 2003 Tex. Gen. Laws 16, 16; *Ex parte Gutierrez*, 337 S.W.3d at 889; *Gutierrez*, 307 S.W.3d at 322. Thus, in Chapter 64 proceedings filed after the legislative amendment, "[a]n indigent convicted person intending to file a motion for post-conviction DNA testing . . . has a limited [statutory] right to appointed counsel," which is "conditioned on the trial judge's finding 'that reasonable grounds exist for the filing of a motion.'" *Ex parte Gutierrez*, 337 S.W.3d at 889 & n.10 (quoting *Gutierrez*, 307 S.W.3d at 321); *see Gutierrez*, 307 S.W.3d at 321, 322 (holding that entitlement to appointed counsel is not absolute and that appointment of counsel is dependent, in part, on trial judge's discretion). Statutory entitlement to appointed counsel for a person "intending to file a motion for post-conviction DNA testing" is now conditioned on three criteria: (1) "the convicted person must inform the trial judge that he or she wants to submit a motion;" (2) "the trial judge must find that 'reasonable grounds' exist for the filing of a motion;" and (3) "the trial judge must find that the

4

convicted person is indigent." *Gutierrez*, 307 S.W.3d at 321; *see* TEX. CODE CRIM. PROC. ANN. art. 64.01(c). Thus, a convicted person who fails to show that reasonable grounds exist for the filing of a Chapter 64 motion is not entitled to appointed counsel. *See Ex parte Gutierrez*, 337 S.W.3d at 890–95; *Harris v. State*, No. 01-10-00171-CR, 2011 WL 662955, at *1–2 (Tex. App.—Houston [1st Dist.] Feb. 17, 2011, pet. ref'd).

An appeal from the denial of a Chapter 64 motion is governed by article 64.05. *See* TEX. CODE CRIM. PROC. ANN. art. 64.05 ("An appeal under this chapter is to a court of appeals . . . ."). Such an appeal is therefore "a proceeding under" Chapter 64, and the conditions for appointment of counsel on appeal are the same as the conditions for appointment of counsel in the trial court. *See id.* art. 64.01(c).

We therefore hold that, when a convicted person files a Chapter 64 motion and the trial court finds that the person failed to demonstrate reasonable grounds for filing the motion, the person is not entitled to appointed counsel to assist with any "proceeding under" Chapter 64, including an appeal. *See* TEX. CODE CRIM. PROC. ANN. arts. 64.01(c), 64.05; *Ex parte Gutierrez*, 337 S.W.3d at 889; *Gutierrez*, 307 S.W.3d at 321, 322.

Here, the trial court found that appellant failed to show reasonable grounds for filing a motion for DNA testing. *See* TEX. CODE CRIM. PROC. ANN. art.

5



# JUDGMENT

## Court of Appeals

## First District of Texas

NO. 01-14-00167-CR

ABRAHAM CAMPOS, Appellant

V.

THE STATE OF TEXAS, Appellee

Appeal from the 149th District Court of Brazoria County.  (Tr. Ct. No. 26,947-3).

This case is an appeal from the final judgment signed by the trial court on February 6, 2014. After submitting the case on the appellate record and the arguments properly raised by the parties, the Court holds that the trial court's judgment contains no reversible error. Accordingly, the Court **affirms** the trial court's judgment.

The Court **orders** that this decision be certified below for observance.

Judgment rendered December 18, 2014.

Panel consists of Chief Justice Radack and Justices Bland and Huddle. Opinion delivered by Chief Justice Radack.



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00167-CR

———————————

**ABRAHAM CAMPOS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 149th District Court
Brazoria County, Texas
Trial Court Case No. 26,947-3

## MEMORANDUM OPINION

A jury convicted appellant, Abraham Campos, of murder in 1992, and the trial court, finding one enhancement paragraph true, assessed punishment at 40 years' confinement. The Fourteenth Court of Appeals affirmed his conviction.

*See Campos v. State*, 946 S.W.2d 414 (Tex. App.—Houston [14th Dist.] 1997, no pet.). In September 2007, appellant filed a motion for DNA testing in the case, which was denied. This Court affirmed the order denying DNA testing. *See Campos v. State*, No. 01-08-00032-CR, 2008 WL 5102463, at * 3 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (mem. op., not designated for publication). A second motion for DNA testing was apparently never ruled on. *See id.* In January 2014, appellant filed a third motion for DNA testing, which the trial court again denied, finding that appellant "has made insufficient allegations to establish by a preponderance of the evidence that the defendant would not have been convicted if additional DNA testing was conducted." Appellant now brings this, his second appeal from the denial of DNA testing, alleging that the trial court erred in (1) determining that appellant failed to meet the requirements of TEX. CODE CRIM. PROC. ANN. art. 64.03 (Vernon Supp. 2014); and (2) denying appellant an evidentiary hearing on his motion.

We affirm.

## BACKGROUND

The background facts, as previously detailed by this Court, are as follows:

In late August 1992, Martin Rodriguez was stabbed to death outside the house he shared with appellant's mother and Rodriguez's uncle, Emilio Miranda. Over the course of several late night hours before the stabbing, appellant, Rodriguez, and Miranda spent time drinking beer

together outside that house. All had consumed many beers. At some point, Miranda left the group and went inside the house.

Miranda testified at trial that he heard Rodriguez screaming and that he looked out a kitchen window to see appellant grabbing Rodriguez while holding a knife. When he ran outside, Miranda saw blood on Rodriguez's body and saw appellant running away from the house.

At trial, appellant's mother denied any knowledge of anything that happened before or after the stabbing at her house, including whether appellant was present. She contradicted some of Miranda's statements and denied seeing Rodriguez's body on the ground, did not know whether he was alive or dead, and just ran to the neighbor's house to ask for help. Appellant's mother also denied speaking to anyone about the stabbing except police detectives. Yet, three other witnesses testified at trial that appellant's mother told them that her son had killed Rodriguez.

Deputy C. Frame testified that he collected items from the scene of the stabbing. Frame found a knife or knife-like instrument inside the house in the kitchen sink. The instrument was "very wet and saturated with water." No identifiable prints were detected on this knife-like instrument. Moreover, no evidence at the trial established that the instrument was used to murder Rodriguez. Deputy Frame was able to lift fingerprints from a beer can he collected at the scene and testified at trial that the prints matched appellant's fingerprints.

Officer T. Earl of the Alvin Police Department encountered appellant at 2:16 a.m. on the night of the offense. Appellant was six-tenths to seven-tenths of a mile away from his mother's house. He was at a pay phone and appeared to be "very intoxicated." When Officer Earl approached him, appellant identified himself as "Juan Carlos." Officer Earl arrested appellant for public intoxication and transported him to the Alvin Police Department. At the police station, appellant denied having a local address or any relatives in the area and claimed that he lived in Mexico City, Mexico. He was not bleeding and had no scratch marks on him or blood splotches on his clothing.

*Campos*, 2008 WL 5102463, at *1 (footnotes omitted).

3

# DENIAL OF MOTION FOR DNA TESTING

Under Texas Code of Criminal Procedure Chapter 64, a convicted person may move for forensic DNA testing of evidence containing biological material. TEX. CODE CRIM. PROC. art. 64.01(a-1). The convicting court may order forensic DNA testing only if the statutory preconditions of Chapter 64 are met. *Bell v. State*, 90 S.W.3d 301, 306 (Tex. Crim. App. 2002). "Basic requirements [for post-conviction DNA testing] are that biological evidence exists, that evidence is in a condition that it can be tested, that the identity of the perpetrator is or was an issue, and that this is the type of case in which exculpatory DNA results would make a difference." *Ex parte Gutierrez*, 337 S.W.3d 883, 891 (Tex. Crim. App. 2011); *see* TEX. CODE CRIM. PROC. arts. 64.01, 64.03. A convicted person is not entitled to DNA testing when the testing would "merely muddy the waters." *Gutierrez*, 337 S.W.3d at 901. In his first issue on appeal, appellant contends the trial court erred in denying his motion for DNA testing.

*Standard of Review*

We review a trial court's decision to deny a motion for post-conviction DNA testing under a bifurcated standard of review. *Rivera v. State*, 89 S.W.3d 85, 59 (Tex. Crim. App. 2002). Under this standard, we afford almost total deference to a trial court's determination of issues of historical fact and its application of the law to fact issues that turn on determinations of witnesses' credibility and demeanor,

4

but we review de novo the trial court's application of the law to fact issues that do not turn on determinations of witnesses' credibility and demeanor. *Routier v. State*, 273 S.W.3d 241, 246 (Tex. Crim. App. 2008). However, where, as here, the trial record and affidavit of appellant are the only sources of information supporting the motion, the trial court is in no better position than we are to make its decision, and we review the issues de novo. *Smith v. State*, 165 S.W.3d 361, 363 (Tex. Crim. App. 2005) (explaining that because trial court did not hold live hearing on request for DNA testing, reviewing court would conduct de novo review as trial court was in no better position to determine issues).

### *Appellant's Motion to Conduct DNA testing*

In his third motion for DNA testing, appellant requested DNA testing of a knife or knifelike instrument, clothes of the State's witness, Emilio Miranda, other clothing seized as evidence, and a pipe found smeared with blood. Appellant claims that "there are newer testing techniques available which can provide results which are more and reliable tests[,]" and that "[t]here are additional tests available, which can explore different [sic] loci, and thereby definitely exclude Defendant Abraham Campos." Neither appellant's motion, nor his affidavit attached thereto, alleges how the items he wished to have tested would establish by a preponderance of the evidence that a reasonable probability exists that he would not have been prosecuted or convicted in exculpatory results had been obtained through DNA

testing. *See Thompson v. State*, 95 S.W.3d 469, 472 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (setting for standard for obtaining DNA testing).

### *Law of the Case Regarding Testing on Knife*

The State contends that this Court's previous opinion creates law of the case preventing appellant from re-litigating the issues addressed in our previous opinion. We agree. In *State v. Swearingen*, the Court of Criminal Appeals considered whether the law-of-the-case doctrine applied to a defendant's fourth motion for DNA testing. 424 S.W.3d 32, 36–38 (Tex. Crim. App. 2014). The court noted as follows:

> The "law of the case" doctrine provides that an appellate court's resolution of questions of law in a previous appeal are binding in subsequent appeals concerning the same issue. In other words, when the facts and legal issues are virtually identical, they should be controlled by an appellate court's previous resolution. This is a court-made doctrine designed to promote judicial consistency and efficiency.

*Id.* at 36 (footnote omitted). The court then refused to reconsider its previous holding, stating:

> Since we have previously held that, as a matter of law, the appellee had not met his burden of proof as to the existence of biological material, and because the legislature's amendment did not alter this result . . . the trial court erred under the law of the case doctrine when it disregarded our previous holding.

*Id.* at 38.

In our previous case, this Court held that appellant was not entitled to DNA testing on the knife or knife-like instrument because "subjecting it to testing would not exonerate appellant[,]" and "[e]ven if the result of DNA testing had been available at his trial, it is not reasonably probable that appellant would have had a 51% chance of avoiding conviction." 2008 WL 5102463, at *3. In this case, appellant's third motion for DNA testing reurges the same issues regarding the knife that we addressed in our previous opinion. Thus, the trial court did not err in rejecting appellant's request for DNA testing on the knife.

***DNA testing on Remaining Items***

Our previous opinion did not address the trial court's denial of DNA testing on the clothing or pipe in possession of the police because appellant had not, at that point, obtained a ruling on that request. *Id.* at *3. In order for a defendant to be entitled to post-conviction DNA testing, he must show by a preponderance of the evidence (that is, a greater that 50% likelihood) that he would not have been convicted had any exculpatory results generated by the proposed testing been available at the time of trial. *Holberg v. State*, 425 S.W.3d 282, 286–87 (Tex. Crim. App. 2014). "Exculpatory results" mean only results excluding the convicted person as the donor of the material. *Id.*

Appellant does not articulate how the absence of his own DNA on Miranda's clothing would be exculpatory. And, the presence of the victim's DNA

7

on Miranda's clothes would only confirm what Miranda had testified to, i.e., that he was present the night Rodriguez was murdered. Appellant does not state whose DNA was likely to be found on the remaining clothes or the bloody pipe, or faucet handle as it is also described. Presumably, the blood on the pipe came from the only person injured at the scene, i.e., the victim. And, the faucet handle or pipe was never alleged to be the murder weapon.[1] Assuming the remaining clothes sought to be tested belonged to appellant, the victim's blood on them would be inculpatory, not exculpatory.

Even if the clothes and pipe had DNA belonging to a third person, given the other evidence in the case, it would not establish by a preponderance of the evidence that appellant was not guilty. *See Swearingen v. State*, 303 S.W.3d 728, 736 (Tex. Crim. App. 2010) ("Texas courts have consistently held that a movant does not satisfy his burden under Article 64.03 if the record contains other substantial evidence of guilt independent of that for which the movant seeks DNA testing."); *Prible v. State*, 245 S.W.3d 466, 470 (Tex. Crim. App. 2008) (affirming a trial court's denial of postconviction DNA testing because "even if the evidence was retested and determined to contain another person's DNA in addition to [the defendant's] DNA, it would not establish by [a] preponderance of the evidence that [the defendant] would not have been convicted if the jury had heard that DNA

---

[1] The inference raised at trial was that the murderer got the victim's blood on the faucet when he cleaned his hands.

8

from a third-party was present."); *Bell v. State*, 90 S.W.3d 301, 306 (Tex. Crim. App. 2002) ("The presence of another person's DNA at the crime scene will not, without more, constitute affirmative evidence of appellant's innocence."); *see also Baylor v. State*, No. 02–10–00561–CR, 2011 WL 4008026, at *3 (Tex. App.—Fort Worth Sept. 8, 2011, no pet.) (mem. op., not designated for publication) (relying on evidence presented at the defendant's trial and recited in an earlier appellate opinion to affirm a trial court's denial of his later motion for DNA testing).

As we set forth in our previous opinion, there was other evidence of appellant's guilt.

> Miranda testified that when he heard Rodriguez scream, he looked out a kitchen window and saw appellant holding a knife to Rodriguez. In addition, when he ran outside, Miranda saw appellant running away from the house. Though appellant's mother contradicted Miranda, other evidence, including the beer can with appellant's fingerprints, shows that he was present at the house on the night of the stabbing. When Officer Frame arrested appellant, he was less than a mile away from his mother's house, where the murder took place. Three individuals testified that appellant's mother told them that her son had killed Rodriguez.

*Campos*, 2008 WL 5102463, at *2. Appellant gave a false name when arrested, denied living in the area, and claimed to be from Mexico City. Under these circumstances, we conclude, as we similarly concluded in appellant's previous DNA appeal, "subjecting [the clothes and pipe] to testing would not exonerate appellant, given the probative force of the evidence tending to show that appellant

9

was guilty and the lack of any link between [the items] and Rodriguez's murder." *Id.* at *3. "Even if the results of DNA testing had been available at his trial, it is not reasonably probably that appellant would have had a 51% chance of avoiding conviction." *Id.*

Accordingly, we overrule appellant's first issue on appeal.

## DENIAL OF HEARING

In his second issue on appeal, appellant contends the trial court erred in denying his motion for DNA testing without first conducting an evidentiary hearing. However, "Article 64.03 does not require any evidentiary hearing before the trial judge decides whether a convicted person is entitled to DNA testing." *Gutierrez*, 337 S.W.3d at 893 (citing *Rivera*, 89 S.W.3d at 58–59).

Accordingly, we overrule appellant's second issue on appeal.

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).

10



**CITY OF ALVIN**                **POLICE DEPARTMENT**

1500 S. Gordon · Alvin, Texas 77511 · (281) 388-4370 · FAX (281) 388-4380

December 23, 2002

To:     Brazoria County D/A Office
         D/A Investigator Gary Epps

From:   Terry L. Earl
         Alvin Police Department
         Criminal Investigations Division
         Property / Evidence Manager

Ref:     Alvin P.D. Case # 9212928 – Homicide

Details: Property still in evidence per present records:

Tag #    11577   Brown paper bag containing:
         1-      White and Light Brown striped short sleeve shirt.
         1-      Pair of Tan pants
** These Items came into evidence at the Alvin Police Department located at 305 W. Sealy on 10/29/1992, and assigned to shelf location "O" in the evidence room. On 04/18/1995 the items were checked out of evidence and taken to the Brazoria County D/A's office. On 05/04/1995 the bag was returned with the above listed contents and assigned to shelf location "N" in the evidence room. On 07/01/1997 the bag and contents were transferred to the New Alvin Police Department, Facility located at 1500 S. Gordon, placed into the evidence vault and assigned to shelf location "J-1". **

Tag #    11578   Brown paper bag containing:
         1-      Pair of Blue Jeans
         1-      Orange, Black and White piece of cloth
** These Items came into evidence at the Alvin Police Department located at 305 W. Sealy on 10/29/1992 and assigned to shelf location "O" in the evidence room. On 04/18/1995 these items were checked out of evidence and taken to the Brazoria County D/A's office. On 05/04/1995 the bag was returned with the above listed contents and assigned to shelf location "N" in the evidence room. On 07/01/1997 the bag and contents were transferred to the New Alvin Police Department Facility located at 1500 S. Gordon, placed into the evidence vault and assigned to shelf location "J-1". **

Tag #    11579   Brown paper bag containing:
         1-      Pair of two-tone gray tennis shoes
         1-      Pair of white socks with red striped tops
** These Items came into evidence at the Alvin Police Department located at 305 W. Sealy on 10/29/1992 and assigned to shelf location "O" in the evidence room. On 04/18/1995 these items were checked out of evidence and taken to the Brazoria County D/A's Office. On 05/04/1995 the bag was returned with the above listed contents and assigned to shelf location "N" in the evidence room. On 07/01/1997 the bag and contents were transferred to the New Alvin Police Department Facility located at 1500 S. Gordon, placed into the evidence vault and assigned to shelf location "J-1". **

Tag #    11847
         1-   VHS Video tape
** This Item came into evidence at the Alvin Police Department located at 305 W. Sealy on 02/25/1993 and assigned to shelf location " I-1". On 04/18/1995 this item was checked out of evidence and taken to the Brazoria County D/A's Office. On 05/04/1995 this item was returned and assigned back to shelf location "I-1". On 07/01/1997 this item was transferred to the New Alvin Police Department Facility located at 1500 S. Gordon, placed into the evidence vault and assigned to shelf location "A-5".
         1-      " ½ " tape
** This item is not presently in evidence at the Alvin Police Department located at 1500 S. Gordon **

Terry L. Earl / Criminal Investigations

# EXHIBIT "A"

AFFIDAVIT

STATEMENT OF FACTS

STATE OF TEXAS    §

COUNTY OF HOUSTON §

    My name is Abraham Campos,TDCJ#721237, I am of sound mind,capable of making this affidavit in support of my "Request For Forensic DNA Testing," and personally acquianted under the penalty of perjury that the facts are true to the best of my knowledge.

### STATEMENTS MADE BY THE STATE'S SOLE-WITNESS FROM THE POLICE REPORT

Lead Investigating Officer R.L.Hubbard: (Offense/Incident Report Page 4 )
First Statement : Dated 8/21/92: "Ramirez stated he heard the victim call him. When he came out into the yard he initially did not see anything,but then saw the victim on his back near Ramirez stated he tried to give assistance to the victim,but then went for help."

Second Statement :Investigating Officer CPL.Selleck:(Supplement Report page 3) " Emilio at first said that he heard Martin calling "UNCLE" in spanish and he (Emilio) went outside but did not see anything at first. He had said that Martin had been outside drinking beer and had wanted HIM to come outside and drink with HIM but HE refused because Martin was to MEAN when HE drank beer."
ThThird Statement: " After further questioning,Emilio said that He did not know who was responsible for the HOMICIDE but that it may have been a BLACK MALE who was seeking retaliation for reporting a disturbance that had occurred about a WEEK prior."

    These are inconsistent statement made by the state's sole-witness Emilio Ramirez or Emilio Miranda his name was also change during the investigation.

    I, Abraham Campos,TDCJ#721237,being presently incarcerated at the Eastham Unit in Lovelady,Texas,County of Houston,Texas,declare under penalty of perjury that the foregoing is true and correct:

Executed this 9th day of March 2015.

/S/ Abraham Campos-TDCJ#721237

    Civil Practice And Remedies Code,Title 6,Chapter 132,V.T.C.A:

A written Unsworn Declaration made as provided by this Chapter By an Inmate in the Texas Department of Criminal Justice-CID may be used in lieu of an Oath Required to be taken before a Notary Public.

1 of 1

## "EXHIBIT C"

DEFENDANT'S EXHIBIT NO. 8

PHOTO TAKEN THE NIGHT OF THIS CRIME BY ARRESTING OFFICER

Terry L. Earl of the Alvin Police Department August 21,1992.

'no scratches,not bleeding and no blood slotches on clothing'

"ORIGINAL ON FILE WITH THE DISTRICT ATTORNEYS OFFICE"



"DEFENDANT WAS ARRESTED FOR PUBLIC INTOXICATION"

AUGUST 21,1992

STATE OF TEXAS §

COUNTY OF BRAZORIA §    ss:    AFFIDAVIT OF PORFIRIO SALAS

Affiant Porfirio Salas, being first duly sworn on his oath, deposes and says as follows:

"My name is Porfirio Salas. I am over the age of 21, of sound mind, capable of making this affidavit, have personal knowledge of the facts related in this affidavit. I am making this affidavit with regard to the criminal case of 'State of Texas vs. Abraham Campos, cause number 26,947, in the 23rd Judicial District of Brazoria County, Texas. The case was tried during the early 1990s. The defendant in the that criminal case was Abraham Campos, prison number 721237, who is imprisoned at the Eastham Unit of the Texas prison system, near Lovelady, Texas 75851.

I am the common-law husband of Guadalupe Gonzales, and we have lived for many years at 1254 Old Galveston Rd., Alvin, Texas 77511. On or about August 20, 1992 an incident occurred near our home at 1254 Old Galveston Road which involved my step-son, Abraham Campos, Emilio Miranda, and Martin Rodriguez. I wish to state that during the months that Emilio Miranda and Martin Rodriguez rented rooms at our home, I never heard that Emilio was the uncle of Martin, nor did anyone tell me that prior to August 20, 1992. In my opinion, from what I knew of both men, Emilio was not related in any way to Martin Rodreiguez. In fact, prior to August 20, 1992 Emilio Miranda and Martin Rodriguez would argue heatedly between themselves; and in my opinion there existed bitterness an contention between the two men. Both men often drank heavily

No one called me to testify for the defense in this case. I would have testified for the defense had I been called to do so. In my opinion Abraham Campos is not the type of individual who would do what he was charged with doing in this case.

PORFIRIO SALAS, Affiant
1254 Old Galveston Road
Alvin, Texas 77511

Subscribed and sworn to before me, the undersigned Notary Public, on this the 14 day of April , 2012.

NOTARY PUBLIC

My Commission Expires:
05-07-2014


NOTARY PUBLIC
STATE OF TEXAS

MARIA P BARRERA
My Commission Expires
May 7, 2014

THE STATE OF TEXAS    §

COUNTY OF BRAZORIA    §     **SS:**     AFFIDAVIT OF GILDARDO CAMPOS

Affiant Gildardo Campos, being first duly sworn, states on his oath as follows:

"My name is Gildardo Campos. I am over the age of 21, have personal knowledge of the facts stated in this 'affidavit' and I am competent to testify to such facts. This 'affidavit' concerns Abraham Campos, prison number 721237, who is imprisoned at the Eastham Unit of the Texas prison system, near Lovelady, Texas. This 'affiadvit' also concerns Abraham Campos' convicted in criminal cause number 26,947, in the 23rd Judicial District Court of Brazoria County, Texas during April, 1995. I am the 'father' of Abraham Campos.

The trial testimony in cause number 26,947 mentioned above show that state witness Emilio Miranda testified before the jury that he had a conversation with me at the courthouse during the Early Fall of 1992. However, what Emilio Miranda testified to, that he had a conversation with me, is false. I have never, at any time, had a conversation whatsoever with Emilio Miranda. His assertion that I did have a conversation with him is false, and I would have testified that it was false had I been called to testify for the defense at the said trial.

"

_____
GILDARDO CAMPOS, Affiant

_____
*18220 DOBY-Ln.*
(address)

_____
*PEARLAND TX 77584*
(address)

Subscribed and sworn to on this the 21 day of April , 2012.

BLANCA E. BRAVO
Notary Public, State of Texas
My Commission Expires
January 02, 2013

_____
Blanca E. Bravo.
NOTARY PUBLIC

My Commission Expires:

January 2, 2013